# FILE COPY - United of Omaha

April 26, 2010

CHARLES HANKEY LAW OFFICE PC
ATTN: MELISSA DAVIDSON
LOCKERBIE SQUARE
434 E NEW YORK ST
INDIANAPOLIS IN 46202

Policy Number: GLTD 672C
Claim Number: 250801864301
Re: Nancy Erhart

Dear Ms. Davidson:

We have completed our review of Ms. Erhart's appeal for Long-Term Disability benefits. Based on our review, we have determined that the denial of the claim was appropriate. Therefore, we are upholding the denial of the claim, and no benefits are payable.

The policy issued to Erhart's employer contains the following provisions:

> **Appropriate Care and Treatment** means medical care and treatment that meet all of the following:
> (a) It is received from a Physician whose expertise, medical training and clinical experience are suitable for treating Your Injury or Sickness;
> (b) It is Medically Necessary;
> (c) It is consistent in the type, frequency and duration of treatment with relevant guidelines based on national medical research, health care organizations and government agencies;
> (d) It is consistent with the diagnosis of Your condition; and
> (e) Its purpose is to improve Your medical condition and thereby aid in Your ability to return to work.
>
> **Disability and Disabled** means that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
> (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and
> (b) unable to generate Current Earnings which exceed 80% of Your Basic Monthly Earnings due to that same Injury or Sickness.
>
> Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with Your employer.
>
> **Elimination Period** means the number of days of Disability which must be satisfied before You are eligible to receive benefits. The elimination period is shown in the Schedule. The elimination period begins on the first day of Disability. If You are working, the elimination period can be satisfied provided Your Disability does not stop for more than the number of accumulated days shown in the elimination period section of the Schedule.

16104253.574

Erhart WF-000113

2

**Regular Care** means:
(a) You visit a Physician as frequently as is medically required, according to standard medical practice, to effectively manage and treat Your disabling condition; and
(b) You receive Appropriate Care and Treatment.

**Regular Occupation** means the occupation You are routinely performing when Your Disability begins. Your regular occupation is not limited to the specific position You held with the Policyholder, but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT). We have the right to substitute or replace the DOT with a service or other information that We determine of comparable purpose, with or without notice. To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.

The information we used to make our determination includes the following:
- Attending physician statements
- Employee statement
- Employer statement
- Job description
- Ms. Erhart's appeal letter dated December 8, 2009
- Your appeal letter
- Medical records from Dr. Davisson dated April 10, 2008 – December 11, 2008
- Medical records from Ms. Meeks dated July 6, 2007 – April 7, 2008
- Medical records from Dr. Taylor dated October 30, 2008
- Medical records from Dr. Herbst dated January 14, 2009
- Meridian Service Group Progress notes dated April 28, 2008 – May 27, 2008
- X-rays dated May 23, 2008, and October 30, 2008
- Ultrasound report dated August 27, 2008
- Staff medical reviews
- Vocational rehabilitation review
- Policy provisions

According to the information in file, Ms. Erhart stopped working as a Lab Technician on July 4, 2008, due to complaints of myofascial pain and depression.

We received an appeal from Ms. Erhart on December 9, 2009. No new or additional documentation was submitted for review. She was provided a copy of her administrative claim file on December 16, 2009. She was also advised to submit all medical records not previously submitted in her file, to include any therapy notes dated beyond May 2008, to our office by February 20, 2010. She called customer service on February 19, 2010, and she advised she would not be able to provide updated documentation to our office because of snow storms. She advised her appointments were cancelled, and she would not be seen until March 4, 2010. We sent her a letter on March 4, 2010, allowing her until April 5, 2010, to provide any additional records. You submitted a letter dated March 9, 2010, advising that you were representing Ms. Erhart, and you requested an additional 30 days to provide information to supplement the appeal. To date, no additional information has been submitted for

3

review. We have granted two requests for additional time to submit information to supplement the appeal. However, because Ms. Erhart sent her appeal in December 2009, we are no longer able to grant any further extensions and must make a decision on the appeal. Therefore, we are making our determination as the file currently stands.

In order to determine disability, we reviewed the medical documentation in file to determine what functional or cognitive impairments were supported and how any supported impairments would translate into restrictions and limitations. We also reviewed the records to determine what Ms. Erhart's maximum work capacity was, and whether or not any supported restrictions and limitations would prevent her from performing the material duties of her regular occupation. In addition, the claim was reviewed to determine whether or not all policy provisions were met.

We acknowledge that Ms. Erhart was assessed with myofascial pain syndrome with accompanying chronic depression. Records from Dr. Davisson's April 10, 2008, office notes indicated that he recommended that Ms. Erhart should take a couple weeks of "stress leave" with an indicated return to work on April 28, 2008. Information in file indicates she did not return to work on April 28, 2008, as additional return to work notes dated June 25, 2008, September 22, 2008, and December 18, 2008, releasing Ms. Erhart to "routine activities" were also received. The clinical evidence in file does not support any functional impairments that would preclude Ms. Erhart from performing the material duties of her occupation that would exceed her elimination period. While she would have required some recovery time following her ankle fracture on January 12, 2009, the records do not support that she was continuously disabled beyond her disability until January 12, 2009. In addition, we have received no follow up records dated beyond her initial consultation on January 14, 2009, for her ankle. Prior to that date, diagnostic x-rays of her right hip taken on May 23, 2008, revealed no fracture or dislocation, and x-rays of her pelvis and lumbar spine taken on October 30, 2008, revealed no significant evidence of osteoarthritis. The lumbar spine x-ray revealed evidence of slight listhesis of L4 on L5 with minimal degenerative disc desiccation at L4-5 and L5-S1; however, October 30, 2008, office notes from Dr. Taylor indicates only conservative treatment with no surgical consultation warranted. Recommendations included a Prednisone taper and a possible epidural injection, and we have received no indication that Ms. Erhart ever returned for an injection. Information supports that Ms. Erhart continued to participate in conservative treatment, to include oral medication, chiropractic manipulations, and continued anti-depressant use, up until her ankle fracture on January 12, 2009. The medical documentation in file does not support physical restrictions and limitations that would prevent Ms. Erhart from performing her regular occupation for a period of time which would exceed her 90-day elimination period forward until her ankle fracture on January 12, 2009.

Regarding her treatment for depression, records indicate that Ms. Erhart was referred for a psychiatric evaluation on April 28, 2008, with complaints of depression, anxiety, and flashback to her son's death a year prior. It is noted in the records from Meridian that Ms. Erhart has a history of symptoms of depression and anxiety for "several years" without an indication of a significant change in her mental functioning as of her claimed date of disability on April 4, 2008. Records support that Ms. Erhart has worked with such conditions for at least one year prior to her claimed disability, if not for several years. Her treatment was advised for weekly individual appointments, weekly group therapy, and monthly psychiatric appointments, and we have received no documentation that Ms. Erhart received any psychiatric therapy beyond May 27, 2008. The current records in her file indicate that her treatment is not of the intensity, duration or frequency to

4

support a global psychiatric impairment that would preclude her from performing her regular occupation, and there are no therapy records dated beyond her 90-day elimination period to support ongoing disability due to a psychiatric impairment.

In summary, the medical documentation currently in file does not support restrictions and limitations due to either a functional or psychological impairment that would have prevented Ms. Erhart from performing her regular occupation beyond her elimination period and does not support a continuous disability. As a result, in the absence of any new medical documentation to review, we are unable to overturn our previous decision.

At this time, Ms. Erhart has exhausted all administrative rights to appeal. We will grant a second courtesy review if we are provided additional medical documentation is submitted within 30 days. Otherwise, no further reviews of the claim will be conducted by United of Omaha, and the claim will remain closed. This claim determination reflects an evaluation of the claim facts and policy provisions. United of Omaha has conducted a full and fair review of the appeal based on the information currently in the file and within the time frames established by ERISA. As the file currently stands, it has been determined that the denial of benefits will be maintained.

If the plan is governed by the Employee Retirement Income Security Act (ERISA), Ms. Erhart has the right to bring a civil action suit once all administrative rights to review have been exhausted. She and her plan may have other voluntary alternative dispute resolution options available, such as mediation. One way to find out what options may be available is to contact the local U.S. Department of Labor Office and your state insurance regulatory agency.

Nothing in this letter should be construed as a waiver of any rights or defenses under the above-captioned policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned.

If you have any questions regarding this matter, please contact our Customer Service Department at 1-800-877-5176.

Sincerely,

Bobbi Burns-Bierwirth
Group Disability Management Services

Erhart WF-000116