UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NANCY ERHART,<br>        *Plaintiff,* | ) <br> ) <br> ) |
| *vs.* | ) <br> ) |   1:11-cv-00301-JMS-MJD |
| UNITED OF OMAHA LIFE INSURANCE<br>COMPANY,<br>        *Defendant.* | ) <br> ) <br> ) <br> ) |
| UNITED OF OMAHA LIFE INSURANCE<br>COMPANY,<br>        *Counterclaim Plaintiff,* | ) <br> ) <br> ) <br> ) <br> ) |
| *vs.* | ) <br> ) <br> ) |
| NANCY ERHART,<br>        *Counterclaim Defendant.* | ) <br> ) <br> ) |

**<u>ORDER</u>**

Presently pending before the Court is Defendant's Motion for Partial Summary Judgment, [dkt. 46], which the Court **GRANTS in part and DENIES in part** for the reasons that follow.

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing

that there is a material issue for trial.  Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. Pro. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. Pro. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved for the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  And when evaluating this inquiry, the Court must give the

non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### BACKGROUND

The following facts are not in dispute, except as noted.[1] Plaintiff Nancy Erhart, an employee of the City of Richmond, was insured by United of Omaha under Group Policy No. GLTD-672C ("Policy").  [Dkt. 47 at 2, 5.]  The Policy provides the following with respect to long-term disability coverage ("LTD"):

The Policy specifically defines the terms "Disability and Disabled" as follows:

**Disability and Disabled** means that because of an Injury or Sickness, a significant change in Your mental or physical function capacity has occurred in which You are:

    (a)  prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and

    (b)  unable to generate Current Earnings which exceed 80% of Your Basic Monthly Earnings due to that same Injury or Sickness.

After a Monthly Benefit has been paid for 2 years, Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation.

Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with Your employer.

\* \* \*

**Gainful Occupation** means an occupation, for which You are reasonably fitted by

---

[1] United of Omaha's "Statement of Material Facts Not in Dispute," consists of 63 enumerated paragraphs, [dkt. 47 at 1-16], only six of which are disputed by Ms. Erhart, [*see* dkt. 57 at 1-6]. Accordingly, except where noted, the following facts are those provided by United of Omaha and confirmed by Ms. Erhart as those not in dispute.

training, education or experience, is or can be expected to provide You with Current Earnings at least equal to 60% of Basic Monthly Earnings within 12 months of Your return to work.

* * *

**Material Duties** means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will We consider working an average of more than 40 hours per week in itself to be a part of material duties. One of the material duties of Your Regular Occupation is the ability to work for an employer on a full-time basis.

[Dkt. 47 at 3-4; 48-1 at 31-32.]

**Appropriate Care and Treatment** means medical care and treatment that meet all of the following:

> (a) It is received from a Physician whose expertise, medical training and clinical experience are suitable for treating Your injury or Sickness;
> (b) It is Medically Necessary;
> (c) It is consistent in type, frequency and duration of treatment with relevant guidelines based on national medical research or published by health care organizations and government agencies;
> (d) It is consistent with the diagnosis of Your condition; and
> (e) Its purpose is to improve Your medical condition and thereby aid in Your ability to return to work.

* * *

**Medically Necessary** means care that is ordered, prescribed or rendered by a Physician or Hospital and is determined by Us, or a qualified party or entity selected by Us, to be:

> (a) provided for the diagnosis or direct treatment of Your injury or Sickness;
> (b) appropriate and consistent with the symptoms and findings or diagnosis and treatment of Your Injury or Sickness; and
> (c) provided in accordance with generally accepted professional standards and/or medical practice.

***

**Regular Care** means:

> (a) You visit a Physician as frequently as is medically required, according to standard medical practice, to effectively manage and treat Your disabling condition; and
> (b) You receive Appropriate Care and Treatment.

4

[Dkts. 47 at 2-3; 48-1 at 31, 33.]

Ms. Erhart may have also claimed a mental disability.  In that regard, the Policy provides:

**Mental Disorder Limitation**

If You are Disabled because of a Mental Disorder, Your benefits will be limited to a total of 24 months while insured under the Policy, unless You are confined as a resident inpatient in a Hospital at the end of that 24-month period. The Monthly Benefit will continue to be paid during such confinement. . . .

In no event will benefits payable due to Mental Disorders be payable beyond the Maximum Benefit period as shown above in the Maximum Benefit Period section.

[Dkts. 47 at 4-5; 48-1 at 8.]

When a claim is made, the Policy directs that:

**Disability Claim Review Decisions**

    (a) Initial review: We will notify You of Our claim decision within 45 days after Our receipt of Your claim, unless additional information is requested as set forth below;

    (b) Extension period: 30 days; and

    (c) Maximum number of extensions: two.

If additional information is needed, We will notify You within 30 days of Our receipt of the claim. Once You receive Our request for additional information, You will have 45 days to submit the additional information to Us.  We will have a total of 105 days (which includes an additional 30-day extension, if necessary, due to circumstances beyond Our control) to process the claim.

If We do not receive the additional information within the specified time period, We will make Our determination based on the available information.

[Dkts. 47 at 4-5; 48-1 26-27.]

If the claimant decides to appeal the claim decision, the Policy directs that:

**Our Response To An Appeal**

    Once We receive Your request for an appeal, We will respond no later than 45 days, unless additional information is requested. If additional information is requested, the following extensions apply:

(a) Extension period: 45 days;
(b) Maximum number of extensions: one.

We will have a total of 90 days to process the appeal.

[Dkts. 47 at 5; 49-1 at 28.]

### <u>Ms. Erhart's Work as a Laboratory Technician for the City of Richmond</u>

Ms. Erhart has an Associate's Degree in chemistry and a Bachelor's degree in biology. Ms. Erhart began working for the City of Richmond as a Laboratory Technician in January 2002 – a light duty occupation. [Dkt. 47 at 5.] Ms. Erhart's job duties and responsibilities did not change between January 2002 and when she stopped working in March 2008. [*Id.*]

Ms. Erhart worked alongside one other Laboratory Technician to fulfill a number of activities. [*Id.*] Her job duties included pH testing, E. coli testing, testing of solids in the water, ammonia and phosphorous testing. [*Id.*] Ms. Erhart testified that each pH test took only 5 to 20 minutes. [Dkt. 47 at 6.] For the E. coli testing, Ms. Erhart or the other Laboratory Technician would turn on a machine, pour in the sample and then read outcomes at certain intervals. [*Id.*] Solids would be placed in a container about the size of a half-liter bottle and then the Laboratory Technician would shake the container and test the results. [*Id.*] To conduct the ammonia and phosphorus testing, Ms. Erhart would mix certain chemicals, place the mixture into a machine and then record the results. [*Id.*] This cycle of testing would take about four hours for Ms. Erhart to complete alone and two and a half hours if the other Laboratory Technician was also working. [*Id.*]

Ms. Erhart was also asked to enter the testing data into charts on the computer, which she testified that she was able to do, attend meetings, and wash the glassware used in the testing. [*Id.*] Ms. Erhart testified that "You hardly ever had to lift the equipment," and "the emotional

6

[component of the job was] just being alert to watch you [sic] are doing to make sure you don't leave a heater on, stir and all of that kind of stuff, you wouldn't want to leave anything on that you shouldn't overnight or even for the whole shift." [*Id.* (quoting dkt. 48-2 at 10).]

## **Application for LTD Benefits and Initial Claims Analysis**

Ms. Erhart claims that her disability began in February 2008 with bad headaches. [*Id.* at 9.]   On April 7, 2008, Ms. Erhart was examined by Samantha Meeks, NP, and complained of headaches for one and half weeks and the stress of having her grandchildren living with her. [*Id.*]

On April 10, 2008, Ms. Erhart visited Dr. Mark Davisson, who noted that Ms. Erhart was under quite a bit of stress both at home and at work and was manifesting a lot of fibromyalgia-like symptoms with trapezius, shoulder, neck syndrome, and headaches.  [*Id.*]   Dr. Davisson noted that Ms. Erhart's stress was manifesting itself both as anxiety and depression, and referred her to Meridian Services for adjunct mental health help.  [*Id.*]

On April 10, 2008, Dr. Davisson advised that Ms. Erhart could return to work on April 28, 2008 without restrictions on her routine activities. [Dkt. 47 at 10.]  Ms. Erhart testified that Dr. Davisson "knew that if I was going to go back to work I needed to be able to do it doing the activities that the lab required." [*Id.* (quoting dkt. 48-2 at 15).]  She continued: "I couldn't go back and sit at a desk and not do my activities as a lab technician. When he would mark routine activities, he was writing that for me to go back to work . . . I could return to work . . . doing routine activities." [*Id.*]

On April 25, 2008, Ms. Erhart visited Dr. Davisson again.  [*Id.*]   According to United of Omaha, Dr. Davisson noted that Ms. Erhart seemed to be functioning a little bit better from a headache standpoint, but was still adjusting to myofascial pain syndrome with chronic

depression, and stated that Ms. Erhart could return to work on May 26, 2008, to routine activities. [*Id*.] Ms. Erhart maintains that Dr. Davisson did not indicate that Ms. Erhart was still adjusting to myofascial pain syndrome with chronic depression, but that he indicated that her pain level on Vicodin was better, but spotty, given the nature of the half-life of Vicodin, and he recommended a duragesic patch to try to alleviate the peaks and valleys in the pain level. [Dkt. 54 at 3.]

On April 28, 2008, Ms. Erhart received a psychological evaluation from Meridian Services, where it was noted that her anxiety was moderate and chronic. [Dkt. 47 at 13.] Meridian Services also indicated that Ms. Erhart had been dealing with her "symptoms of depression and anxiety for several years." [*Id*.]

At her deposition, Ms. Erhart testified as follows when questioned about her potential mental disabilities:

> Q: Part of your claim is a claim for a mental disability, correct?
> A: It seems like Mutual of Omaha took it that way. I didn't mean for it to be.

[*Id*. (quoting dkt. 48-2 at 22).]

Ms. Erhart does not dispute the transcript but maintains that she "did not confirm that she was not making a claim for mental conditions." [Dkt. 54 at 4.] She testified to the following when questioned further about any potential claim for mental disability.

> Q: Just so we are clear, is it your testimony you never made a claim for mental disability?
> A: On this claim I said that I had depression some days so bad that I couldn't get out of bed. And Dr. Davisson had put me on the very first return to work "due to stress," but the headaches and pain I was having is what he thought was due to stress.
> Q: So is it your testimony –
> A: But it was physical pain.
> Q: Is it your testimony that you never had a mental disability?
> A: Depression doesn't seem to be a real disability, it can be treated. I feel like

that all of the symptoms that I was having was all part of the fibromyalgia,
muscle pain.
Q: Is it fair to say that the claim you made and is an [sic] issue in this case is a
physical disability of fibromyalgia?
A: Yes.
Q: But not a mental disability claim; correct?
Ms. DAVIDSON: I object to the form of the question.
MR. JONES: You can answer.
THE WITNESS: I choose not to.
Q: Is that the answer you want to leave?
A: Yes.

[*Id.* at 4-5 (quoting dkt. 48-2 at 22).]

Ms. Erhart further testified that there was no change in her mental state between February 2008 and April 2008. [Dkt. 47 at 13.] Specifically, Ms. Erhart testified that "I can't say that there was any real difference. I don't remember there being a difference in my mental state." [*Id.*] Ms. Erhart did not seek any psychological treatment after her evaluation at Meridian Services. [*Id.*]

On May 23, 2008, Ms. Erhart again visited Dr. Davisson, who prescribed Lyrica for her stated pain. [*Id.* at 10.] Ms. Erhart testified that she could not take Lyrica because it made her "loopy." [*Id.*] At that time, Dr. Davisson provided Ms. Erhart with another release indicating that she could return to work on June 25, 2008, with routine activities. [*Id.*]

On June 23, 2008, Ms. Erhart again returned to Dr. Davisson, who stated that she was qualitatively better and her mood was reasonable. [*Id.*] Dr. Davisson further noted that Ms. Erhart's overall affect is a bit brighter, less depressive, but made no physical findings. [*Id.*] Dr. Davisson suggested that Ms. Erhart should "continue being off work as long as she can afford the loss of her paycheck." [*Id.*] On that same date, Dr. Davisson provided Ms. Erhart a release to return to work on September 22, 2008. [*Id.*] Davisson also stated that Ms. Erhart was likely heading towards some form of Disability. [Dkt. 54 at 3.]

On July 2, 2008, a Long-Term Disability Claim Employer's Statement was completed by Stephanie Sherwood (on behalf of the City of Richmond) and sent to United of Omaha, stating that Ms. Erhart's last day of work was April 3, 2008, and that Ms. Erhart had not returned to work.  [*Id.*]

The Policy required Ms. Erhart to submit a completed application before United of Omaha could make a decision on the claim.  [Dkt. 47 at 7.]  On July 14, 2008, Rick Fetter responded on behalf of United of Omaha with a receipt of Ms. Erhart's LTD Employer's Statement, but advised that the application was incomplete since Ms. Erhart failed to submit the remaining portions of the application.  [*Id.*]  At her deposition, Ms. Erhart acknowledged that she was aware that the July 2008 submission was incomplete.  [*Id.*]

On August 1, 2008, Ms. Erhart's attending physician, Dr. Mark E. Davisson, completed the Attending Physician's Statement ("APS"), which described Ms. Erhart's condition as "Myofascial pain syndrome" with "total body pain and trigger point tenderness."  [*Id.*]  Dr. Davisson noted on the APS that Ms. Erhart should return to work as soon as she feels well enough, "possibly" in September 2008.  [*Id.*]  He also noted that Ms. Erhart is able to use her hands for repetitive action and use her feet for repetitive movements.  Ms. Erhart did not submit this APS to United of Omaha until February 2009.  [*Id.*]

On August 10, 2008, Mr. Fetter sent a second letter to Ms. Erhart requesting the submission of Ms. Erhart's portion of the application, the physician's portion and also the signed and dated authorization.  [*Id.*]  On September 3, 2008, Mr. Fetter sent another letter to Ms. Erhart stating: "We are still waiting for your portion and your attending physician portion of the long-term disability application form." [*Id.*]  Mr. Fetter advised Ms. Erhart that at that time her claim was being placed in an inactive status, but once the information was received, United of

Omaha would continue processing the claim.  [*Id.* at 7-8.]  Ms. Erhart understood that "the inactive [status] meant that until [she] sent something that [United of Omaha] couldn't ... process [her] claim."  [*Id.* at 8.]

On September 18, 2008, Ms. Erhart met with Dr. Davisson, and Dr. Davisson noted that Ms. Erhart was trying to decide if she was going to ever get back to work, or seek disability.  [*Id.* at 11.]  Dr. Davisson noted that Ms. Erhart's affect was a bit brighter, albeit generally flat, and that her trigger point tenderness was mild throughout.  [*Id.*]  He recommended her to "push exercise."  [*Id.*]  Dr. Davisson then issued a note stating that Ms. Erhart was to be off work due to fibromyalgia, at least until December 18, 2008.  [*Id.*]

Ms. Erhart testified that in September 2008, she was relying on Dr. Davisson to tell her whether she could go back to work:

> Q. Dr. Davisson had noted that back in September of 2008 you were trying to decide if you were going to go back to work or seek disability?
> A. Yes.
> Q. Do you recall kind of wrestling over that decision?
> A. I thought that that was pretty much left up to him to decide. I don't remember him leaving it up to me to decide. I really don't. He would tell me to come back in three months and we would decide – better decide then.

[*Id.* (quoting dkt. 48-2 at 15).]

At that time, Dr. Davisson began asking Ms. Erhart whether she was a candidate to go on Social Security, but Ms. Erhart responded that she "would like to go back to work, that [she] wanted to try to improve to go back." [*Id.* (quoting dkt. 48-2 at 15).]  Ms. Erhart testified that "[t]hat was still my intention up until, the end of December. I was hoping that I would feel better." [*Id.*]

Ms. Erhart was also seen by Dr. Scott Taylor at Physical Medicine and Rehabilitation and received chiropractic treatment. [*Id.*] She was diagnosed with left sided sciatica and indicated that the pain limited her sitting, standing, and walking. [*Id.*]

Ms. Erhart testified that in November 2008, her symptoms started improving with the chiropractic treatments and the injection that she received from Dr. Taylor. [*Id.*] Her current condition is similar to how she felt in November 2008 after these treatments. [*Id.* at 12.]

On December 11, 2008, Ms. Erhart returned to Dr. Davisson. [Id. at 12.] During that visit, Dr. Davisson noted that Ms. Erhart's mood had "dropped," but attributed "a lot of this to the holidays and the diminished daylight hours." [Id.] He also noted a lot of trigger point tenderness diffusely consistent with fibromyalgia. [Id.] Dr. Davisson then completed a return to work release that merely stated "off work indefinitely." [Id. (quoting dkt. 48-13 at 7).] Ms. Erhart testified that in December 2008, Dr. Davisson advised that it "would be better to hire an attorney and have them ask" for the documents related to her disability claim. [Id.]

On February 19, 2009, Ms. Erhart submitted the missing portions of her disability application to United of Omaha, including the APS. [*Id.* at 8.] However, her February 19, 2009, submissions omitted any information regarding a psychiatric evaluation that she had previously received from Meridian Services Corporation. [*Id.*]

On February 25, 2009, Mr. Fetter sent a letter to Ms. Erhart stating that United of Omaha had reviewed her application for disability benefits, as submitted, but needed additional information to make a determination regarding her eligibility for benefits. [*Id.*]

After these medical records were received, on March 25, 2009, Julie Grancer, RN, completed a medical file review and recommended identifying the physical capacity that Ms. Erhart was capable of performing and any specific restrictions and limitations. [*Id.*] Ms.

Grancer further noted that United of Omaha did not receive any documented physical examination by Dr. Davisson concerning fibromyalgia, which described whether 11 or more of the 18 specific areas of Ms. Erhart's body were painful under pressure and the extent of that pain.  [*Id*. at 8-9.]

In April 16, 2009, Mr. Fetter sent a letter to Ms. Erhart stating that United of Omaha had reviewed her application for disability benefits, but needed additional information concerning her mental disability claim from Meridian Services to make a determination regarding her eligibility for benefits.  [*Id*. at 13-14.]  United of Omaha received the Meridian Services documents in late May 2009.  [*Id*. at 14.]  On May 27, 2009, Mr. Fetter sent a letter to Ms. Erhart stating that United of Omaha had received medical information from Meridian and had referred that information to their nurse case manager for review.  [*Id*.]

On April 30, 2009, Rena Serkins, MS, reviewed the job description for Laboratory Technician and assessed the job duties and requirements of Ms. Erhart's position at the City of Richmond, which was defined as "light work" occupation.  [*Id*. at 9.]

On May 8, 2009, Sadie Burr, MA, reviewed Ms. Erhart's psychiatric history.  Ms. Burr stated that there did not appear to be any specific mental health restrictions noted.  [*Id*. at 14.]  Ms. Burr noted that Ms. Erhart had symptoms of depression for "several years."  [*Id*.]  She also found no indication of any significant change in Ms. Erhart's mental function that would render her unable to work starting April 4, 2008.  [*Id*.]  Instead, Ms. Burr noted that the psychiatric evaluation from Meridian Services found conditions of "moderate" intensity.  [*Id*.]  Meridian Services had recommended conservative treatment of weekly individual appointments, weekly group therapy and monthly psychiatric appointments to be completed while Ms. Erhart was working.  [*Id*.]

13

On May 28, 2009, Ms. Grancer performed a second review of the medical records, incorporating a review of the Meridian Services documents and the APS, and stated that the records did not appear to preclude Ms. Erhart from standing six hours out of an eight-hour day or the ability to lift up to 20 pounds occasionally per Department of Labor guidelines.  [*Id.*] Later, Kim Rhen affirmed the finding that restrictions and limitations were not warranted.  [*Id.*]

On June 10, 2009, United of Omaha, by letter, denied Ms. Erhart's application for LTD benefits because the documentation submitted by Ms. Erhart did "not support a functional change that prevented [Ms. Erhart] from performing the Material Duties of [her] own occupation as of the initial date of disability."  [Dkt. 47 at 15 (quoting dkt. 49-1 at 1).]

## Ms. Erhart's Appeal of the LTD Claim Decision

In early December 2009, Ms. Erhart appealed United of Omaha's denial of her claim, stating: "I have been to my doctor several times in the last six months and just went last week for a physical."  [*Id.* (quoting dkt. 49-2 at 1).]  On December 16, 2009, Bobbi Burns-Bierwirth, Appeals Specialist, sent a letter to Ms. Erhart acknowledging receipt of Ms. Erhart's appeal request.  [*Id.*]

On December 24, 2009, Nancy Rosenstock, RN, a Senior Nurse Case Manager, completed a full medical file review, which United of Omaha claims is "in addition to and independent from Ms. Grancer's previous reviews."  [*Id.*]  Ms. Erhart disputes that the review was independent from Ms. Grancer's reviews, pointing out that "in the reason for review section, the claims manager states, 'Prior NCM review indicated that R&Ls were unsupported beginning 1/12/09 due to a fractured ankle, but not prior to 1/12/09.'"  [Dkt. 54 at 6 (quoting dkt. 49-4 at 1).]  Ms. Rosenstock concluded that based on Ms. Erhart's medical documents "physical restrictions and limitations do not appear to be supported." [Dkt. 47 at 15 (quoting dkt. 49-4 at 4).]  She

14

specifically deferred "consideration of any psychological restrictions and limitations to internal Behavior Health Case Managers." [*Id.* (quoting dkt. 49-4 at 4).]

On December 30, 2009, Dr. Timothy Tse completed a physician review of the psychological medical records. [*Id.*] Dr. Tse recommended obtaining additional medical records due to only having psychiatric records from April 28, 2008 to May 27, 2008. [*Id.*]

On January 22, 2010, Ms. Burns sent a letter to Ms. Erhart requesting additional mental health records. [*Id.*] In February and March 2010, Ms. Erhart sought additional time to supplement her medical records, and United of Omaha agreed to allow Ms. Erhart to April 5, 2010, to provide them. [Dkt. 47 at 16.] On March 9, 2010, Ms. Erhart obtained counsel who requested another thirty-day extension of time to supplement the medical records submitted. [*Id.*] United of Omaha never received additional materials from Ms. Erhart or her counsel, and on April 26, 2010, by letter, United of Omaha determined that the denial of Ms. Erhart's LTD claim was appropriate and that no benefits were payable under the Policy. [*Id.*]

### Ms. Erhart's Activities of Daily Living During the Claim Period

In her deposition, Ms. Erhart testified that since November 2008, she has been able to read and play games on her phone. [*Id.* at ] She has custody of her two grandsons, ages five and six years old. [*Id.*] She also does a load of laundry daily and takes her grandchildren to school. [*Id.*] Ms. Erhart assists with her grandsons' homework, takes them swimming, in the past took them to church, and last summer took them to Myrtle Beach for a vacation. [*Id.*]

Ms. Erhart began caring for her grandsons after their father, Ms. Erhart's son, died in July 2007. [*Id.*] In November 2008, Ms. Erhart's grandsons began living with their mother. [*Id.*] Ms. Erhart had concerns about her grandsons living with their mother; thus, in November 2008, Ms. Erhart retained an attorney and sought custody of her grandsons, but her request was

15

denied.  [*Id.*]  However, in 2009, Ms. Erhart's grandsons' mother injured herself badly, and in May 2009, Ms. Erhart obtained sole custody of her grandsons.  [*Id.* at 12-13.]

Additionally, Ms. Erhart is currently able to drive distances for at least fifty minutes and has attempted to volunteer at her grandson's day care.  [*Id.* at 13.]

# III.
## DISCUSSION

Ms. Erhart alleges that United of Omaha breached the provisions of the Policy by refusing to pay her disability benefits.  [Dkt. 1-3 at 2.]  United of Omaha seeks summary judgment on all issues, or in the alternative, partial summary judgment on the following issues: (i) whether Ms. Erhart's 2008-2009 claim for LTD benefits under the Policy required any payments by United of Omaha; (ii) if so, whether Ms. Erhart's claim for benefits for symptoms related to myofascial pain syndrome are limited to a term of twenty-four (24) months by the terms of the Policy; (iii) whether Ms. Erhart's claim for benefits under the Policy due to symptoms of depression required any payments of LTD benefits; and (iv) whether United of Omaha denied Ms. Erhart's application for LTD benefits in good faith.  [Dkt. 47 at 1.]  The Court will consider each issue in turn.[2]

---

[2] The Court notes, and both parties concede, that because the City of Richmond is a governmental entity, the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1132(a)(1)(B) does not govern.  Accordingly, CCA's denial of benefits will not be given the highly deferential "arbitrary and capricious" standard afforded an ERISA plan conferring discretionary authority, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) but rather the *de novo* review afforded a breach of contract claim.

### A.  Ms. Erhart's 2008-2009 Claim for Long-Term Disability Benefits[3]

United of Omaha first argues that it is entitled to summary judgment on Ms. Erhart's 2008-2009 claim for benefits because Ms. Erhart "failed to fulfill her contractual 'proof of loss' requirements under the Policy, to show an inability to perform the requirements of her light duty occupation."  [Dkt. 47 at 21.]  Ms. Erhart cites the opinion of Dr. Davisson as evidence that a genuine issue exists for trial.  [Dkt. 57 at 13.]  The Court agrees.

While United of Omaha argues that their medical professionals' review of Ms. Erhart's medical documents led them to conclude that Ms. Erhart's claim was unsupported by medical evidence, [dkt. 47 at 18-24], Ms. Erhart points out that no independent medical doctor or nurse ever reviewed Ms. Erhart's file, and argues that the credibility of their conclusions should be reserved for the trier of fact.  [Dkt. 57 at 14.]  Furthermore, the opinions of Dr. Davisson, Ms. Erhart's treating physician, which support Ms. Erhart's claim that she experienced "significant change" in her functioning that prevented her "from performing at least one of the Material Duties" of her "Regular Occupation," [dkt. 57 at 12], create a genuine issue of fact regarding the severity of Ms. Erhart's condition and her ability to continue in her light-duty position.[4]  [*Id.*]

---

[3] In her response brief, Ms. Erhart seeks to strike the expert opinions of Shirley Daugherty and Professor William Warfel for purposes of summary judgment.  [Dkt. 57 at 6, 8.]  As the Court does not rely on either of these opinions in reaching its ruling, Ms. Erhart's motions to strike are **DENIED AS MOOT**.

[4] United of Omaha has moved to strike Exhibits 4-5 attached to Ms. Erhart's Response, claiming it has been prejudiced by the inclusion.  [Dkt. 58 at 5.]  Because Ms. Erhart had previously produced Dr. Davisson's entire medical file as part of her expert report, [dkt. 59 at 4], in which the challenged exhibits were included, and United of Omaha has had ample notice of Dr. Davisson's file, the Court finds that inclusion of Exhibits 4-5 is not prejudicial to United of Omaha, and therefore **DENIES** its motion to strike.

Allowing Ms. Erhart the benefit of all reasonable inferences, as it must, *Celotex*, 477 U.S. at 330, the Court finds that genuine issues of material fact exist as to whether Ms. Erhart was entitled to LTD benefits for her 2008-2009 claim.   Accordingly, the Court denies United of Omaha's motion for summary judgment with respect to Ms. Erhart's 2008-2009 claim for LTD benefits.

### B.  Whether Ms. Erhart's Claim for LTD Benefits is Contractually Limited

United of Omaha also argues that Ms. Erhart's claim for LTD benefits is limited, as a matter of law, to a term of twenty-four months.  [Dkt. 47 at 23.]  Specifically, United of Omaha contends that Ms. Erhart cannot prove that there is "no occupation for which she is 'reasonably fitted by training or experience,' where she 'can earn at least 60% of Basic Monthly Earnings ... within 12 months of [her] return to work.'"  [*Id*. at 26 (quoting dkt. 48-1 at 31-32).]  Ms. Erhart argues in response that because United of Omaha "never made a decision on this issue," [dkt. 57 at 14], she should be able to recover in the present matter LTD benefits beyond twenty-four months.  [*Id*.]  Both parties are somewhat off the mark.

It is well-established that this Court's review of Ms. Erhart's entitlement to benefits is limited to the period up to the date of her filing suit.  *Morgan v. Aetna Life Ins.*, 157 F.2d 527, 530 (7th. Cir. 1946) ("We conclude that it was erroneous to grant recovery for any time after the commencement of the suit, and so hold in view of the overwhelming authority in support of this conclusion.").   As of February 28, 2011, the date of this suit, Ms. Erhart's claim for LTD benefits had exceeded a period of twenty-four months, but she had not filed a claim with United of Omaha for LTD benefits beyond the twenty-four month period.  And in order to qualify for benefits beyond 24 months, she must establish an inability to "perform all of the Material Duties

18

of any Gainful Occupation." This is in fact a higher burden than the proof required for the first 24 months of coverage.

Although Ms. Erhart has not made an "any occupation" claim, the Court recognizes that the law does not require parties to perform futile acts. *See M-Plan, Inc. v. Indiana Comprehensive Health Ins. Ass'n*, 809 N.E.2d 834, 839 (Ind. 2004) (recognizing exceptions to conditions precedent when that act is futile). In this case, it would have been futile for Ms. Erhart to file a claim that she could not perform any occupation when it was CCA's position that she could continue performing the job she had. Accordingly, the law forgives Ms. Erhart failure file a claim for LTD benefits beyond the twenty-four month period, and it finds that Ms. Erhart the jury may determine whether she is entitled to recover for any LTD benefits she may be owed up to the date of filing. *Morgan*, 157 F.2d at 530.

Because Ms. Erhart's recovery is limited to the period up to February 28, 2011, the Court **GRANTS IN PART AND DENIES IN PART** United of Omaha's motion for summary judgment on the issue of whether Ms. Erhart is entitled to benefits beyond the twenty-four month period. Her recovery is indeed limited, but only up the date that suit was filed.

### C.  Whether Ms. Erhart Has Alleged a Valid Claim for Mental Disability

United of Omaha also seeks summary judgment on the issue of whether Ms. Erhart ever alleged a valid claim for mental disability. In support of its motion, United of Omaha highlights portions of Ms. Erhart's testimony in which she asserts that she never submitted a claim for mental disability.

> Q: Part of your claim is a claim for a mental disability, correct?
> A: It seems like Mutual of Omaha took it that way. I didn't mean for it to be.

[Dkt. 47 at 27 (quoting dkt. 48-2 at 22).]

Although Ms. Erhart argues in her response brief that she "did not confirm she was not making a claim for mental conditions," [dkt. 57 at 4], and that she "had a mental condition so severe she sometimes did not get out of bed," [*id*], her argument is unavailing in light of the fact that she never submitted medical evidence to United of Omaha that would support a claim for LTD benefits for mental disability, [dkt. 47 at 27], and her argument that she did contradicts her deposition testimony.

Moreover the undisputed evidence, especially her evaluation at Meridian Services establishes she is not entitled to benefits under several policy provisions.   First the evaluation establishes that Ms. Erhart "report[ed] having symptoms of depression and anxiety for several years," [dkt. 48-17 at 5], thus she cannot meet the policy requirement that such condition represented "a significant change" in her mental health.   Moreover, she did not seek the recommended treatment following that evaluation, and thus she has not demonstrated that she obtained "Regular Care" for it, as required by the unambiguous language of the Policy, [dkt. 48-1 at 31, 33].

Because Ms. Erhart has not demonstrated that she experienced "a significant change" in her mental health, obtained "Regular Care" for the condition, and submitted a claim for mental disability to United of Omaha, the Court finds as a matter of law that she is not entitled to any LTD benefits for symptoms of depression or any other mental health condition.   The Court therefore **GRANTS** United of Omaha's motion for summary judgment with respect to that issue.

The Court notes, however, that to the extent her depressive symptoms were part of or exacerbated the pain symptoms which form the basis of her claim, evidence of her depression remains admissible.

### D. Whether United of Omaha Denied Ms. Erhart's Application for Long-Term Disability Benefits in Good Faith

Finally, United of Omaha seeks summary judgment on the issue of whether its denial of Ms. Erhart's claim was performed in good faith, arguing that "Ms. Erhart is claiming a good faith dispute of the validity of her claim of the lack of diligent investigation." [Dkt. 47 at 32.] Ms. Erhart argues in response that United of Omaha's denial of her LTD benefits was not performed in good faith because the claim analysts lacked knowledge of fibromyalgia, [dkt. 57 at 20], the review of her claim was tainted by biased views of fibromyalgia, [*id.* at 23], and the claim analysts failed to obtain additional records and other vital information, [*id.* at 25].

Under Indiana law, when a plaintiff has alleged that an insurer has acted in bad faith due to denial of coverage, the plaintiff must demonstrate that the insurer "had knowledge that there was no legitimate basis to deny liability." *Monroe Guar Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 976 (Ind. Ct. App. 2005). Lack of diligence alone is not sufficient to support an award. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 520 (Ind. 1993). Here, Ms. Erhart has not provided evidence from which a reasonable trier of fact could infer that the United of Omaha's analysis of her claim was performed in bad faith. Her arguments about the claim analysts' familiarity of fibromyalgia and failure to obtain additional records would, at most, establish a lack of diligent investigation by United of Omaha, which under Indiana law is not an act of bad faith. *Id.*

Ms. Erhart also makes much of Mr. Fetter's comment on his referral document to Ms. Grancer that Ms. Erhart "doesn't seem disabled to me," and his admission that he does not normally editorialize in that manner when referring a file for review. [Dkt. 57 at 27 (citing dkt 48-9 at 1).] However, even allowing Ms. Erhart the generous benefit of all reasonable

inferences, *Celotex*, 477 U.S. at 330, including that Mr. Fetter's written comment influenced Ms. Grancer's conclusion that Ms. Erhart was not disabled, the comment does not amount to evidence of bad faith on the part of United of Omaha.  *See Monroe*, 829 N.E.2d at 977 ("As a general proposition, a finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.") (internal citation and quotation marks omitted).  The statement here merely reflects an opinion.  United of Omaha is therefore entitled to summary judgment on Ms. Erhart's bad faith claim.

## IV.
### CONCLUSION

Defendant United of Omaha Life Insurance Company is entitled to summary judgment on the issue of whether Ms. Erhart submitted a valid claim for benefits related to mental disability and whether its claim review was in good faith.  However, genuine disputes of material fact exist concerning whether Ms. Erhart was entitled to LTD benefits for the time period up until February 28, 2011.  As described above, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment.  [Dkt. 46.]

09/14/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Robert B. Clemens
BOSE MCKINNEY & EVANS, LLP
rclemens@boselaw.com

Melissa A. Davidson
CHARLES D. HANKEY LAW OFFICE
mdavidson@hankeylawoffice.com

22

Curtis T. Jones
BOSE MCKINNEY & EVANS, LLP
cjones@boselaw.com